UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER FERRELL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SPARK REVENUE, LLC<br><br>*Defendant.* | Case No. 6:25-cv-00093-JFH-SPS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY THE CASE**

Defendant Spark Revenue, LLC's motion fails at the threshold because there is no agreement to arbitrate. Arbitration is a matter of consent, and Plaintiff never consented. Spark Revenue's evidence shows only that someone, somewhere, clicked boxes on websites that Plaintiff never visited—before she even obtained the cell phone number at issue. A person cannot agree to arbitrate disputes concerning a number she did not yet own. The law is clear that where the making of an arbitration agreement is in dispute, a court must resolve that question before arbitration can be compelled. Here, Plaintiff's sworn declaration establishes that she never visited Defendant's websites, never checked any "I confirm" box, and could not have provided or confirmed the phone number that Defendant relies on because she did not obtain it until after the alleged submissions occurred.

Because no agreement was ever formed, the Court need not compel arbitration, conduct a trial under Section 4 of the FAA, or otherwise defer to an arbitrator. There is no agreement to enforce, and Defendant's motion should be denied outright. Even if Defendant could show otherwise, the terms it relies upon are so one-sided and oppressive that they are substantively

1

unconscionable and unenforceable. However, even if the Court finds that there is an enforceable arbitration agreement between the Defendant and someone, a jury trial should occur because it was not the Plaintiff.

## LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 et seq., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). That issue is for the court, not the arbitrator, to decide, even when there is a valid delegation provision. *Int'l Ass'n of Bridge, Struct., Ornamental, & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004). When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate. *Id.* If the record shows a material issue of fact on whether the parties had an agreement to arbitrate the issue must be remanded for jury trial. *Daniel v. ABM Indus*., No. 4:21-cv-00269-KGB, 2022 U.S. Dist. LEXIS 61189, at *11 (E.D. Ark. Mar. 31, 2022)

As it pertains to who must decide, the "issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause." *Fedor v. United Healthcare, Inc.*, 976 F .3d 1100, 1105 (10th Cir. 2020); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 295, 130 S. Ct. 2847,

177 L. Ed. 2d 567 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) ("[A] court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue." (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967))).

**ARGUMENT**

Defendant bears the burden of proving the existence of a valid arbitration agreement, and it has not carried that burden. Plaintiff never visited Spark Revenue's websites, never clicked any assent box, and did not even acquire the phone number until after the supposed "consents" were recorded. Arbitration cannot be compelled absent proof of mutual assent. Because no contract was ever formed, there is nothing to enforce and no trial need be held.

Even if an agreement existed (it does not), the terms Spark Revenue invokes are facially unconscionable. They impose a one-year limitations period, reserve unilateral power for Spark Revenue to change the rules, and strip Plaintiff of statutory rights. Under Oklahoma law, such provisions are unenforceable as a matter of law.

Thus, the motion fails both because there was never any agreement to begin with and because, even if there had been, its terms are unconscionable.

1. **Even if an agreement to arbitrate were formed (it was not), the agreement is substantively unconscionable and therefore unenforceable.**

Even if an agreement to arbitrate were formed, it would be substantively unconscionable. Arbitration agreements are "simply contracts," *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024), and they are subject to the same defenses as any other contract—including the defense of unconscionability.

3

Oklahoma courts apply a two-part analysis to unconscionability: whether the terms reflect (1) gross inequality in bargaining power, and (2) provisions so one-sided as to shock the conscience or create unfair surprise. Okla. Stat. tit. 12A, § 2-302; *Stoll v. Chong Lor Xiong*, 2010 OK CIV APP 110, 241 P.3d 301, 306–07 (unconscionability turns on onerous inequality, unfair surprise, and terms so one-sided that "no fair and honest person" would accept them, and § 2-302's framework is properly applied by analogy beyond sales of goods).

The Oklahoma Supreme Court has emphasized that when a contractual clause effectively strips a party of meaningful remedies, it is unconscionable and unenforceable. In *Tuttle v. Kelly-Springfield Tire Co.,* 1978 OK 134, 585 P.2d 1116, the Court held that a contractual limitation of a consumer's personal-injury remedies was prima facie unconscionable, placing the burden on the drafter to justify the restriction. Absent such justification, the clause was struck down. *Id.* at 1119–22. The guiding principle from Tuttle is clear: a "remedy" that in practice forecloses recovery or defeats the purpose of the statute is no remedy at all. That is what Spark Revenue's terms do.

First, the agreement imposes a one-year limitations period, cutting off claims that Congress expressly allowed to be brought within a longer statutory timeframe under the TCPA and similar consumer-protection statutes. This arbitrary deadline deprives Plaintiff and the putative class of valid remedies. *See Benedia v. Super Fair Cellular, Inc.,* No. 07 C 01390, 2007 U.S. Dist. LEXIS 71911, at *1 (N.D. Ill. Sep. 26, 2007) ("The Telephone Consumer Protection Act, 47 U.S.C.S. § 227, was enacted after 1990 and does not contain an express statute of limitations. Therefore, 28 U.S.C.S. § 1658 four-year statute of limitations applies to it.")

Second, the agreement gives Spark Revenue unilateral authority to modify its arbitration terms at will, rendering the promise to arbitrate illusory because Spark Revenue could rewrite the rules after a dispute arises and such provisions squarely rejected such unilateral-modification

4

clauses as unenforceable. *See Douglas v. Johnson Real Estate Investors, LLC*, 470 Fed. Appx. 823, 825 (11th. Cir. 2012) ("The MDRA relied upon the employee handbook to detail the arbitration procedures to be used should a dispute arise. Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid.")

Third, the agreement forces consumers into arbitration while reserving for Spark Revenue the ability to pursue certain claims in court, creating an asymmetrical allocation of rights that Oklahoma law condemns as "so one-sided that no fair and honest person would accept [it]." *Stoll v. Chong Lor Xiong*, 241 P.3d 301, 307–09 (Okla. Civ. App. 2010). Considered together, these provisions are not mere quirks of drafting; they are deliberate mechanisms designed to suppress consumer claims and shield Spark Revenue from liability, the very definition of substantive unconscionability under Oklahoma precedent. These are the kind of one-sided, oppressive allocations *Stoll* condemns as shocking to conscience and unsupported by meaningful choice. *See* 241 P.3d at 307–09.

The terms Spark invokes here are so lopsided and oppressive that they are substantively unconscionable and unenforceable under Oklahoma law. The Federal Arbitration Act requires the Court to be "satisfied" that an agreement exists before compelling arbitration, and here the record shows the opposite: terms that shock the conscience. For these reasons, the Court should deny Defendant's motion to compel arbitration in its entirety without even considering the Plaintiff's staunch denial of a website visit.

> **2. Even if there was an enforceable arbitration agreement, there is no agreement to arbitrate because Plaintiff never visited any of Defendant's websites, let alone clicked on a box manifesting assent to terms.**

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has emphasized that, despite the liberal policy favoring arbitration, "consent" remains the "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.*

Defendant Spark Revenue cannot invoke any arbitration clause against Plaintiff because the factual question of whether she ever agreed as a matter of contract is squarely in dispute. Ms. Farrell has declared under penalty of perjury that she never visited Spark Revenue's websites—Credit America, Assist America, or ResourceUSAOnline—and never checked any "I confirm" box. In fact, Spark Revenue's own evidence purports to show supposed "opt-ins" occurring before July 20, 2024, but Plaintiff did not even obtain the cell phone number at issue until after that date. Farrell Declaration ¶¶ 4–6. She could not have provided, confirmed, or agreed to anything associated with that number before then. *Id.* Defendant's records also identify IP addresses located in Arkansas and Grove, Oklahoma, which do not match Plaintiff's location or usage. *Id.* ¶ 7. These disputes place contract formation—the threshold to any arbitration analysis—squarely before the Court.

Courts in this Circuit have already recognized that where the making of an arbitration agreement is disputed, Section 4 of the FAA requires a trial. In *Greiner v. Credit Acceptance Corp.*, 2017 U.S. Dist. LEXIS 20993, at *6-8 (D. Kan. Feb. 13, 2017), the plaintiffs denied signing the contract, swore their signatures were forgeries, and the court refused to compel arbitration until a factfinder could determine whether the agreement was ever formed. Likewise in *Tolliver v. True*,

the defendants sought to compel arbitration based on an engagement letter that allegedly bore the client's signature. 2007 U.S. Dist. LEXIS 73281, at *2–3 (D. Colo. Sept. 28, 2007). The plaintiff disputed the authenticity of that signature, arguing that the client never actually signed the agreement. *Id.* at *6–7. The court held that under § 4 of the FAA, disputes over whether a party ever signed the contract go to the making of the arbitration agreement itself, and that such disputes must be resolved by the court applying a summary-judgment standard. *Id.* at *4–5. Because the plaintiff raised a genuine issue of fact as to whether the signature was valid, the court ruled that the issue of contract formation had to be tried before any arbitration could proceed. *Id.* at *5, *7–8.

The same principle applies here. Plaintiff has sworn she never visited Spark Revenue's websites, never clicked any confirmation box, and did not even obtain the phone number until after the supposed consents occurred. Farrell Declaration ¶¶4-8. Spark Revenue's reliance on someone else's digital submissions—made with a number that was not hers at the time and from locations where she does not use the internet—is the digital equivalent of a forged signature. Just as a forged name cannot bind someone to arbitrate, neither can fabricated or misattributed online clicks. These facts place contract formation in genuine dispute, and under § 4 the question must be resolved by a jury before arbitration can be compelled.

Defendant's motion ought to be denied based on Plaintiff's declaration. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

7

>Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). Hobbs is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary. *E.g., Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *8-12 (M.D. Tenn. Apr. 16, 2025) ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) (denying defendant's motion to compel arbitration where "plaintiff has identified facts showing a genuine dispute as to her acceptance of defendant's arbitration agreement").

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *5-6 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because

8

he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.* As a result, Defendant has been and will be unable to meet its burden entitling Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including his physical location and other mismatched information. 2019 WL 6878863, at *1–*2. And because Plaintiff never visited Defendant's websites, Plaintiff agreed to nothing.

3. **If there is an enforceable Arbitration Agreement, because there is a dispute as to whether an arbitration agreement exists, minimally a jury trial is required.**

Under Section 4 of the Federal Arbitration Act, the making of an arbitration agreement is for the Court, not the arbitrator, to decide. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). The Court must first determine whether the parties agreed to arbitrate at all, and where evidence conflicts, a jury must decide. 9 U.S.C. § 4. The FAA's text is explicit: "If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." Id. Here, Plaintiff's sworn denial that she ever visited the websites or agreed to arbitration creates a material fact dispute requiring denial of the motion—or, at minimum, a jury trial on contract formation. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (a district court should proceed to a jury trial, if the nonmoving party so requests, to determine the facts and whether the parties agreed to arbitrate.

The burden is on Spark Revenue, as the party seeking arbitration, to prove both the existence of a valid agreement and that Plaintiff herself assented. *Parisi v. Okla. Windows & Doors,*

9

*LLC*, 704 F. Supp. 3d 1269, 1276 (W.D. Okla. 2023); *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329 (3d Cir. 2022); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Courts consistently hold that arbitration cannot be compelled absent proof of mutual assent. *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) (remanding for lack of evidence of assent to browsewrap terms). Spark Revenue has provided screenshots of online forms, but it has no competent evidence that Ms. Farrell herself saw or agreed to any terms. Its records instead tie the supposed opt-ins to someone else's IP addresses and to dates when Plaintiff did not even have the number at issue. Farrell Declaration ¶¶4-8.

The Supreme Court has made clear that arbitration agreements are "simply contracts," and where a party challenges the validity or formation of that contract, the court must decide the issue before compelling arbitration. *Coinbase*, 602 U.S. at 151; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). That rule applies here.

Courts addressing similar disputes routinely deny motions to compel arbitration where the plaintiff swears they never visited the website or assented to the terms. See *Hobbs v. Apollo Interactive, Inc.*, 2019 WL 6878863, at *1–2 (M.D. Ga. Dec. 17, 2019) (finding no agreement to arbitrate where plaintiff testified he never visited the site, despite defendant's records); *Gilliam v. Prince Health Grp. LLC*, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025) (defendant offered "no evidence that Plaintiff was the person who entered the information"); *Woodard v. SmartMatch Ins. Agency, LLC*, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) (finding genuine dispute over plaintiff's acceptance of arbitration clause).

So too here. Plaintiff flatly denies agreeing to arbitrate. The dates of the alleged "consents" precede her acquisition of the number. The IP addresses do not trace to her. And Defendant has provided no reliable evidence connecting Plaintiff to the alleged submissions.

Where the making of the arbitration agreement is in dispute, Section 4 requires denial of the motion or, at minimum, a jury trial.

### 4. Whether an arbitration agreement was formed is a question for this Court.

As the FAA and the 10th Circuit have made clear, "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." 9 U.S.C. § 4.(the court must be "satisfied that the making of the agreement for arbitration . . . is not in issue" before compelling arbitration); *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (stating formation challenges "cannot be delegated to an arbitrator"). Here, there is a formation dispute. Plaintiff says she never digitally agreed to arbitrate through clickwrap or otherwise (indeed, as noted above, such an agreement would be impossible). Spark Revenue says she did. This dispute must be decided by a judge, not an arbitrator.

Spark Revenue points to a delegation clause providing that disputes over arbitrability are to be delegated to the arbitrator. ECF 25 at 4. That delegation clause is not relevant here. Rather, such delegation clauses allow parties to decide whether a particular dispute is covered by an arbitration agreement that nobody disputes. *Munoz v. Conduent State & Local Sols., Inc.*, No. 24-2044, 2025 U.S. App. LEXIS 5852, at *6-7 (10th Cir. Mar. 13, 2025) (the arbitrability of a dispute concerns whether parties have agreed to submit a particular dispute to arbitration—not whether an arbitration agreement was formed in the first place).

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay should be denied in its entirety.

11

| Dated: September 5, 2025 | Respectfully Submitted: |
|---|---|
| | */s Anthony I. Paronich*<br>Anthony I. Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>(617) 485-0018<br>anthony@paronichlaw.com<br>*Attorney for Plaintiff and the Putative Class* |