IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER FERRELL, *individually and on behalf of all others similarly situated,*<br><br>                  Plaintiff,<br><br>v.<br><br>SPARK REVENUE, LLC,<br><br>                  Defendant. | Case No.: 6:25-cv-00093-JFH-JAR |

**DEFENDANT SPARK REVENUE, LLC'S REPLY IN SUPPORT OF ITS
<u>OPPOSED MOTION TO COMPEL ARBITRATION AND STAY THE CASE</u>**

Adam C. Doverspike, OBA No. 22548
GABLEGOTWALS
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
T: (918) 595-4800 | F: (918) 595-4990
Email: adoverspike@gablelaw.com

Jonathan L. Williams* (DC Bar No. 999708)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: jonathan.williams@lw.com
*pro hac vice*

**Attorneys for Defendant Spark Revenue, LLC**

## TABLE OF CONTENTS

                                                                                                                                **Page**

ARGUMENT .................................................................................................................................1

I.     THE ARBITRATION AGREEMENT DELEGATES THE (MERITLESS) UNCONSCIONABILITY ARGUMENTS TO THE ARBITRATOR ................................1

        A.    The Arbitration Agreement Delegates Enforceability to the Arbitrator ..................1

        B.    Even if the Court Could Consider the Unconscionability Arguments, They Would Not Defeat Arbitration ..................................................................................3

                1.    Plaintiff's Unconscionability Arguments Fail on the Merits .......................3

                2.    The Severability Clause Would Require Arbitration Even if Plaintiff's Unconscionability Arguments Succeeded ..................................5

II.    THERE IS NO GENUINE DISPUTE THAT PLAINTIFF AGREED TO ARBITRATE ON AT LEAST ONE OCCASION ..............................................................6

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*A.C. Dellovade, Inc. v. Walsh Fed./Alberici J.V.*,
  2019 WL 2870110 (W.D. Okla. July 3, 2019)...........................................................................5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................................6, 7, 9

*Anderson v. Regis Corp.*,
  2006 WL 8457208 (W.D. Okla. Apr. 26, 2006) ......................................................................3

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................................................................4

*Avedon Eng'g, Inc. v. Seatex*,
  126 F.3d 1279 (10th Cir. 1997) ...............................................................................................6

*Belnap v. Iasis Healthcare*,
  844 F.3d 1272 (10th Cir. 2017) ...........................................................................................1, 3

*Beltran v. AuPairCare, Inc.*,
  907 F.3d 1240 (10th Cir. 2018) ...............................................................................................4

*Conrad v. Camping World Holdings Inc.*,
  2025 WL 66689 (N.D. Ala. Jan. 9, 2025).................................................................................9

*Dedmon v. OKC S. Hills. Inv., LLC*,
  2021 WL 5234556 (W.D. Okla. Nov. 9, 2021) .......................................................................5

*Douglas v. Johnson Real Estate Inv., LLC*,
  470 F. App'x 823 (11th Cir. 2012) ..........................................................................................4

*Fedor v. United Healthcare, Inc.*,
  976 F.3d 1100 (10th Cir. 2020) ...........................................................................................1, 6

*Freeman v. Glanz*,
  2018 WL 4134669 (N.D. Okla. Aug. 29, 2018) ......................................................................9

*Hancock v. AT&T, Inc.*,
  2011 WL 3626785 (W.D. Okla. Aug. 11, 2011) .....................................................................4

*Hobbs v. Apollo Interactive, Inc.*,
  2019 WL 6878863 (M.D. Ga. Dec. 17, 2019) .......................................................................10

*Jovel v. TeamSnap, Inc.*,
    2025 WL 2161056 (D. Colo. July 30, 2025) ...................................................................6

*Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*,
    No. 20-CV-00261-STV, 2021 WL 4439800 (D. Colo. Sept. 27, 2021) ...................7

*Lewis v. Circuit City Stores, Inc.*,
    500 F.3d 1140 (10th Cir. 2007) .....................................................................................6

*Petrie v. GoSmith, Inc.*,
    360 F. Supp. 3d 1159 (D. Colo. 2019) ..........................................................................7

*Pierce v. Kellogg, Brown & Root, Inc.*,
    245 F. Supp. 2d 1212 (E.D. Okla. 2003) ......................................................................4

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ......................................................................................................2, 3

*Shahin v. J & L Acquisitions, LLC*,
    756 F. Supp. 3d 1230 (W.D. Okla. 2024) ..........................................................6, 7, 8

*Stephen v. Sec. Fin. of Okla., LLC*,
    653 F. Supp. 3d 1077 (W.D. Okla. 2023) .....................................................................2

*Strom v. First Am. Pro. Real Estate Servs.., Inc.*,
    2009 WL 2244211 (W.D. Okla. July 24, 2009) ............................................................5

*U.S. ex rel. Alamo Env't, Inc. v. Cape Env't Mgmt., Inc.*,
    2012 WL 6726571 (W.D. Okla. Dec. 27, 2012) ...........................................................5

*Wallace v. Yellow Transp., Inc.*,
    2006 WL 8436597 (W.D. Okla. Aug. 8, 2006) ............................................................5

*Woodard v. SmartMatch Ins. Agency*,
    2024 WL 4252803 (N.D. Ill. Sept. 20, 2024) ..............................................................10

**ARGUMENT**

Plaintiff Amber Ferrell's response to Defendant Spark Revenue LLC's ("Spark Revenue") evidence that she repeatedly agreed to arbitrate claims is twofold: One, the Arbitration Agreement is unconscionable. And two: none of the sign-ups were her. Only the arbitrator may consider the first argument, which is wrong in any event. And the second is backed only by a conclusory declaration too insubstantial to create a *genuine* issue of material fact. The Court should compel arbitration and stay this case.

**I.    THE ARBITRATION AGREEMENT DELEGATES THE (MERITLESS) UNCONSCIONABILITY ARGUMENTS TO THE ARBITRATOR**

Plaintiff first argues (at 3-5) that, even if she agreed to its terms, the Arbitration Agreement is unconscionable and unenforceable. This argument ignores well-settled case law from the U.S. Supreme Court and Tenth Circuit holding that, when an arbitration agreement delegates enforceability to the arbitrator, questions of enforceability—including unconscionability arguments like the one here—are questions for the arbitrator. Even were those issues properly before the Court, they would not preclude arbitration.

**A.    The Arbitration Agreement Delegates Enforceability to the Arbitrator**

When an arbitration agreement delegates issues of enforceability to the arbitrator, a court cannot adjudicate any challenge to the enforceability of an arbitration agreement. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105-07 (10th Cir. 2020). Once a court determines that the parties "agreed to arbitrate arbitrability," it must "eschew consideration of the arbitrability of the claims" and compel arbitration. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292-93 (10th Cir. 2017). Here, the Arbitration Agreement delegates arbitrability disputes to the arbitrator in two separate ways: through an express delegation clause, and by incorporating the JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules"). And because none of Plaintiff's

unconscionability arguments targets the delegation clause or the incorporation of the JAMS Rules, the Court must leave those arguments to the arbitrator.

The Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) illustrates this well-settled principle. There, a party (Jackson) sought to avoid arbitration by arguing that the agreement to arbitrate was unconscionable—just as Plaintiff seeks to do here. *Id.* at 65. The agreement contained a delegation clause giving the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement." *Id.* at 71 (alteration in original). The Court held that unless Jackson "challenged the delegation provision specifically," the unconscionability issues had to be decided by the arbitrator. *Id.* at 72. Because the unconscionability arguments targeted only the agreement to arbitrate "as a whole"—and not the delegation clause specifically—those challenges had to be resolved by the arbitrator, not a court. *Id.* at 72-73.

As in *Rent-A-Center*, the Arbitration Agreement delegates enforceability to the arbitrator. First, it contains a delegation clause giving the arbitrator "the exclusive and sole authority to resolve any dispute relating to the interpretation, construction, validity, applicability, or enforceability of these Terms and Conditions and this arbitration provision." Dkt. 25-1 at 13, 19. These terms are substantively identical to the delegation clause in *Rent-A-Center* and thus require any challenge to the Arbitration Agreement as a whole to be decided by an arbitrator, not this Court. *See* 561 U.S. at 71; *see Stephen v. Sec. Fin. of Okla., LLC*, 653 F. Supp. 3d 1077, 1083 (W.D. Okla. 2023) (sending dispute to arbitration without addressing unconscionability arguments that were not addressed to the delegation clause). Second, the Arbitration Agreement validly delegates issues of arbitrability to the arbitrator by incorporating the JAMS Rules. *See* Dkt. 25-1 at 13, 19. Like the delegation clause, the JAMS Rules provide that "arbitrability disputes,

including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted and ruled upon by the Arbitrator." Rule 11(b), JAMS Rules (excerpt attached as Ex. 1). The Tenth Circuit has already held that "incorporation of the JAMS Rules clearly and unmistakably delegates questions of arbitrability." *Belnap*, 844 F.3d at 1283.[1]

The delegation clause and incorporation of the JAMS rules mean that the Court may only consider Plaintiff's arguments if they "challenge . . . the delegation provision specifically." *Rent-A-Center*, 561 U.S. at 72. None of Plaintiff's arguments fit the bill: Plaintiff identifies as unconscionable only the one-year statute of limitations, Spark Revenue's supposed "unilateral authority" to alter the Agreement's terms, and the argument that the Agreement "forces consumers into arbitration while reserving for Spark Revenue the ability to pursue certain claims in court." Dkt. 31 ("Opp.") at 4-5. As a result, Plaintiff's unconscionability arguments should be left to the arbitrator.

        **B.**      **Even if the Court Could Consider the Unconscionability Arguments, They Would Not Defeat Arbitration**

Even if the Arbitration Agreement did not delegate issues of enforceability to the arbitrator, Plaintiff's unconscionability arguments could not defeat arbitration. Each of the arguments fails on the merits. And even if they did not, the severability clause would still allow arbitration to go forward.

        **1.**      **Plaintiff's Unconscionability Arguments Fail on the Merits**

*First*, Plaintiff does not contend (at 4) that the one-year statute of limitations bars her claims, so it cannot be a basis for refusing enforcement. *See Anderson v. Regis Corp.*, 2006 WL

---

[1] Although *Belnap* involved Rule 8(c) of the JAMS Streamlined Arbitration Rules & Procedures, the text of that rule is exactly the same as the applicable rule here. *Id.* at 1281.

3

8457208, at *6 (W.D. Okla. Apr. 26, 2006) (rejecting challenge to arbitration agreement's one-year statute of limitations where plaintiff filed her claim within one year). As for her assertion that absent class members' claims might be time-barred, it is irrelevant because Plaintiff has no right to assert a class claim. *See* Dkt. 25-1 at 11, 16 ("THE ARBITRATION AGREEMENT ALSO INCLUDES A CLASS ACTION WAIVER, WHICH MEANS THAT YOU AGREE TO PROCEED WITH ANY CLAIM INDIVIDUALLY AND NOT AS PART OF A CLASS ACTION.").[2] The statute of limitations thus does not affect class claims.

*Second*, the Arbitration Agreement does not "give[] Spark Revenue unilateral authority to modify its arbitration terms at will." *See* Opp. 4. For any "material" change to the Arbitration Agreement, Spark Revenue must provide "notice and an opportunity to opt-out." Dkt. 25-1 at 13, 19. Such an opt-out right defeats Plaintiff's argument. *See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 2014 WL 7338914, at *2 (W.D. Okla. Dec. 22, 2014) (right to opt out of amendments defeated claim that arbitration agreement was illusory); *Hancock v. AT&T, Inc.*, 2011 WL 3626785, at *6-7 (W.D. Okla. Aug. 11, 2011) (rejecting challenge to arbitration agreement allowing change to "material" provisions only upon notice a right to opt out); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F. Supp. 2d 1212, 1215 (E.D. Okla. 2003) (arbitration provision allowing amendment on ten days' notice did not render agreement illusory).[3]

*Third*, the Arbitration Agreement does not "force[] consumers into arbitration while reserving for Spark Revenue the ability to pursue certain claims in court." *See* Opp. 5. The

---

[2] Plaintiff does not challenge the class-action waiver, nor could she. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (allowing enforcement of class-action waiver in arbitration agreement); *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1260 (10th Cir. 2018).

[3] The unpublished Eleventh Circuit decision that Plaintiff cites (at 5) allowed modification "without [the plaintiff's] agreement or knowledge"—not the situation here. *See Douglas v. Johnson Real Estate Inv., LLC*, 470 F. App'x 823, 826 (11th Cir. 2012).

agreement exempts *all* claims that may be filed in small claims court and certain other disputes regardless of who asserts them. Dkt. 25-1 at 12, 19. But even if Plaintiff were right, it would not matter: There is "no requirement of Oklahoma law that a contractual obligation to arbitrate disputes must be mutual." *See A.C. Dellovade, Inc. v. Walsh Fed./Alberici J.V.*, 2019 WL 2870110, at *3 (W.D. Okla. July 3, 2019); *U.S. ex rel. Alamo Env't, Inc. v. Cape Env't Mgmt., Inc.*, 2012 WL 6726571, at *3 (W.D. Okla. Dec. 27, 2012). Like the others, this final unconscionability argument would fail were it not contractually committed to the arbitrator.

### 2. The Severability Clause Would Require Arbitration Even if Plaintiff's Unconscionability Arguments Succeeded

Regardless of the merits, none of the arguments can defeat arbitration because the Arbitration Agreement contains a severability clause: "If a portion of this arbitration provision (other than the class action waiver) is deemed unenforceable, the remaining portions of this arbitration provision shall remain in full force and effect." Dkt. 25-1 at 13, 19. Courts routinely apply such severability provisions to send cases to arbitration despite claims that aspects of the arbitration agreement are unconscionable or otherwise unlawful. *See, e.g.*, *Dedmon v. OKC S. Hills. Inv., LLC*, 2021 WL 5234556, at *2 (W.D. Okla. Nov. 9, 2021) (severing fee shifting and cost-sharing provisions); *Strom v. First Am. Pro. Real Estate Servs., Inc.*, 2009 WL 2244211, at *3 (W.D. Okla. July 24, 2009) (severing "no appeal" provision and collecting cases); *Wallace v. Yellow Transp., Inc.*, 2006 WL 8436597, at *4 (W.D. Okla. Aug. 8, 2006). Such a result is "consistent with the terms of the contract, the intent of the parties, Oklahoma contract law, and the Federal Arbitration Act's policy favoring the enforcement of arbitration agreements." *Strom*, 2009 WL 2244211, at *3 (cleaned up). Even if the unconscionability arguments had merit (and even if the Court could consider them), the Court would still have to compel arbitration.

## II. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF AGREED TO ARBITRATE ON AT LEAST ONE OCCASION

As a back-up, Plaintiff denies that she was the one who entered her information—including her name, address, phone number, and email address—more than ten times into forms on Spark Revenue's websites and thus agreed to arbitrate.[4] Plaintiffs often seek to avoid arbitration this way—either by claiming that they do not remember signing any arbitration agreement or (as here) by baldly denying that they ever agreed to arbitration. But consistent with the "strong federal policy favoring arbitration," *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1150 (10th Cir. 2007), courts carefully scrutinize plaintiffs' efforts to dispute business records showing an agreement to arbitrate. When a business seeks to compel arbitration based on its records, a plaintiff cannot avoid arbitration by offering a conclusory affidavit denying what the business records show. Here, Plaintiff fails to show a genuine issue as to each and every sign-up documented in Spark Revenue's records, so she cannot avoid arbitration.

Disputes over whether a party agreed to arbitration are handled using a summary judgment-like procedure. *Shahin v. J & L Acquisitions, LLC*, 756 F. Supp. 3d 1230, 1234-35 (W.D. Okla. 2024) (summarizing Tenth Circuit precedent). To justify a trial, a plaintiff must identify a factual dispute that is both "genuine" and "material. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997). Under this familiar standard, a "scintilla of evidence" is not enough to avoid arbitration. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Jovel v. TeamSnap, Inc.*, 2025 WL 2161056, at *4 (D. Colo. July 30, 2025) (explaining that mere existence of "metaphysical doubt" about formation cannot defeat motion to compel arbitration). There must be sufficient evidence for "reasonable" and "fair-minded" jurors to find in the non-moving party's

---

[4] Unlike enforceability, the Court may resolve this issue. *Fedor*, 976 F.3d at 1105-07.

favor. *Anderson*, 477 U.S. at 252. Thus, when a movant's business records show that a party has agreed to arbitrate, the mere fact that the party opposing arbitration "disputes that he signed the arbitration agreement" is not enough to avoid arbitration. *Shahin*, 756 F. Supp. 3d at 1235-36 (collecting authority). Put differently, "a plaintiff's 'general denial of signing the arbitration agreement' is not sufficient to raise a genuine factual question about the existence of a signed arbitration agreement." *Id.* at 1235 (quoting *Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *9 (D. Colo. Sept. 27, 2021)); *Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019) ("[G]eneral denials and statements that a user does not recall visiting a website or agreeing to arbitrate are insufficient to defeat arbitration.").

Through a declaration from its Chief Technology Officer, Spark Revenue demonstrated that Plaintiff agreed to arbitrate by submitting her personal information and indicating her consent to Terms & Conditions containing an arbitration agreement on at least ten separate occasions between July 31, 2022 and June 13, 2024. *See* Declaration of Bo Parrish ("Parrish Decl.) Dkt. 25-1 at 1-9. Plaintiff does not dispute that the websites appeared or operated as Parrish described in his declaration, nor does she dispute the authenticity of the business records showing Plaintiff's personal information or Parrish's knowledge regarding those records. *See id.* Instead, despite Spark Revenue having provided evidence that she visited Spark Revenue's websites and agreed to arbitrate 10 times over a two-year period, she claims (without explanation) in a declaration of just over a page that she *never* even visited the websites, much less entered her information and agreed to arbitrate claims against Spark Revenue. *See* Declaration of Amber Ferrell ("Ferrell Decl."), Dkt. 31-1. No "reasonable" and "fair-minded" jury could conclude based on this declaration that all ten of the sign-ups were by someone other than Plaintiff. *See Anderson*, 477 U.S. at 252.

Begin with Plaintiff's claim that she "never" visited any of the websites at issue and never entered her information on them. This is precisely the kind of "general denial" that cannot defeat a motion to compel. *E.g.*, *Shahin*, 756 F. Supp. 3d at 1235-36. For good reason: The claim is incredible on its face. Plaintiff is purporting to *know* that she never visited these websites *more than three years* after Spark Revenue's records show that she first did so. She does not identify any basis for this assertion other than her own say-so. No reasonable jury would credit such a claim.

Plaintiff's primary non-conclusory denial rests on her assertion in her brief (at 6) that "she did not even obtain the cell phone number at issue until after [July 20, 2024]." But her declaration asserts only that "I obtained the cell phone number ending in 5183 . . . on July 20, 2024." Ferrell Decl. ¶ 4. But that is a non-sequitur: Spark's argument was not that Plaintiff supplied her *current* phone number to Spark Revenue prior to July 20, 2024, it was that Plaintiff supplied her phone number *as it existed at that time* to Spark Revenue. Mot. 5-7. Spark Revenue provided the first six digits of that phone number in its declaration, Parrish Decl. at 9, and Plaintiff does not deny that those digits match her pre-July 20, 2024 phone number. For good measure, Spark confirms that the final four digits of that phone number were -5392. Second Declaration of Bo Parrish ("2d Parrish Decl.") ¶ 5 (attached as Ex. 2). And according to public records, this was Plaintiff's phone number at the time. Declaration of Patrick Conley ("Conley Decl.") ¶ 10 (attached as Ex. 3).

Far from establishing a genuine dispute, Plaintiff's phone-number change confirms that that Plaintiff is the one who submitted her information to Spark Revenue. According to Spark Revenue's business records, in the *four days immediately after she got her new phone number*, *Plaintiff signed up two more times using a new number*. On July 21, 2024—the day after she got her new number—she submitted the number 918-297-5831 (her new number with a typographical

8

error in the last four digits). 2d Parrish Decl. ¶ 6. And three days later, on July 24, she signed up again with her new phone number—this time correctly entered. *Id.* Apparently, Plaintiff's theory would be that, beginning the day after she obtained a new phone number, some other, unidentified person already knew her new phone number and used it to fake sign-ups with Spark Revenue twice in three days. No "reasonable" and "fair-minded" jury would believe such a story. *See Anderson*, 477 U.S. at 252.

Plaintiff's attempts to cast doubt on the IP addresses similarly fall short. Without identifying which, or the basis for the assertion, Plaintiff asserts that she "understand[s] that" IP addresses associated with her sign-ups "show IP addresses from Arkansas and Grove, Oklahoma." Ferrell Decl. ¶ 6. But she does not claim that *all* of the IP addresses were inconsistent with her location, as would be required to cast doubt on the prospect that she *ever* agreed to arbitrate. *See id.* Nor does she identify the basis for her "understand[ing]" about the locations of her IP addresses. *See Freeman v. Glanz*, 2018 WL 4134669, at *8 (N.D. Okla. Aug. 29, 2018) (witnesses claimed "understanding" insufficient to show required personal knowledge). Finally, she states that her "IP address *is* different" from the IP addresses identified in Spark Revenue's records, but she does not deny that it ever was any of the IP addresses identified from July 2022 to July 2024. Ferrell Decl. ¶ 6 (emphasis added). This matters, because one's current IP address says nothing about whether years-old internet transactions with different IP addresses involve the same person. Conley Decl. ¶ 11.

Based on *this* record, there is no genuine factual dispute about whether Plaintiff agreed to arbitrate claims against Spark Revenue on one or more occasions. That Plaintiff can point (at 6-9) to courts in other cases involving different records requiring a trial to assess formation is of no moment. *See Conrad v. Camping World Holdings Inc.*, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9,

9

2025) (undisputed declaration showing that the one sign-up occurred before the plaintiff had the relevant phone number); *Hobbs v. Apollo Interactive, Inc.*, 2019 WL 6878863, at *1-2 (M.D. Ga. Dec. 17, 2019) (factual dispute existed as to single online sign-up because plaintiff was in transit away from home at the time and did not have a device that used the OS associated with the sign-up); *Woodard v. SmartMatch Ins. Agency*, 2024 WL 4252803 (N.D. Ill. Sept. 20, 2024) (declaration denying that the plaintiff had the kind of phone associated with one sign-up at issue). Unlike the cases that Plaintiff cites, Spark Revenue has provided evidence that Plaintiff repeatedly agreed to arbitrate claims many times through sign-ups on its websites over a multi-year period. In contrast to those cases, Plaintiff's attempt to deny that she did the sign-ups (the July 2024 phone number change) only confirms that she was the person who agreed to arbitrate. On this record, there is no genuine dispute about whether—on at least *one* occasion—Plaintiff agreed to arbitrate claims against Spark Revenue. Absent such a genuine factual dispute, the Court must compel arbitration.

## CONCLUSION

For the reasons above and in Spark Revenue's Motion, the Court should compel arbitration and stay this case. Should the Court conclude that a trial is necessary, Spark Revenue requests that the Court schedule a trial expeditiously and allow for discovery limited to the issues of formation, including third-party discovery on Plaintiff's internet service and telephone providers.

Dated this 19th day of September 2025

*s/Adam C. Doverspike*
Adam C. Doverspike, OBA No. 22548
**GABLEGOTWALS**
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120
T: (918) 595-4800 | F: (918) 595-4990
adoverspike@gablelaw.com

10

Jonathan L. Williams* (DC Bar No. 999708)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: jonathan.williams@lw.com

*pro hac vice*

**Attorneys for Defendant Spark Revenue, LLC**

**CERTIFICATE OF SERVICE**

On September 19, 2025, I caused a copy of the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF filing system, which will send notification of such filing to all registered participants.

*s/Adam C. Doverspike*
Adam C. Doverspike, OBA No. 22548
